Thank you, Mr. Chief Justice, and may it please the Court. A claim modeled after Skinner accrues at the end of the state court litigation seeking DNA testing. There are two sets of reasons why, one doctrinal, the other practical. First, doctrinally, a Skinner claim challenges the law, not a judgment. So it makes sense to challenge what the state court of last resort authoritatively says the law means, after that, and that is to say that Skinner's claim is not a judgment, it is a challenge to what the state court of last resort authoritatively says the law means. That construction becomes final on denial of rehearing. By analogy, appellate review does not proceed until a lower court denies rehearing, and traditional due process claims aren't complete until the state's full procedures deny due process. The fact is, rehearing can change reasoning and results. And while a Section 1983 prisoner need not exhaust, just as a litigant need not seek rehearing, the clock doesn't start ticking until the state court procedures have come to an end. Second, as a practical matter, tying accrual to the end of state court litigation is simple, predictable, and sensible. Tying accrual to some earlier stage is not. Linking accrual to the trial court's judgment would disrespect the state court's appellate process and require a stay in almost every case. It would clutter dockets with protective complaints, motions, and amended complaints. And it raises more questions than it answers. The Fifth Circuit said Reed's claim accrued in 2014, but now Gertz says 2016. Gertz's notice rule is unprincipled and unpredictable. It will burden courts and litigants alike with uncertain analyses comparing various state court opinions. Accrual before denial of rehearing isn't much better. It treats the state's rehearing process as irrelevant. It likewise threatens parallel litigation, especially in states with busy courts and short limitations periods. Here's a straightforward answer. A Skinner claim accrues at the end of the state court litigation. I welcome the Court's questions. Counsel, could you spend a minute on precisely what your liberty interest in that you've been deprived, that your client has been deprived of, and who deprived him of it? Your Honor, of course, as the Court recognized in Osborne, the liberty interest is proving one's innocence with newly discovered evidence. And so, as the Court said in Osborne, it's a matter of procedural due process. The procedures need to be fair to vindicate that interest. Here, the allegation in Mr. Reed's complaint is that there's a procedural due process violation based on the way the Court of Criminal Appeals in Texas interpreted Article 64. And it is Gertz, the respondent here who's a district attorney, who is giving effect to that interpretation by continuing to deny DNA testing without due process of law because You mean by complying with the court ruling? I think he's enforcing the court ruling, Your Honor, by – I would back up and say, as Texas recognizes in page 5 of the red brief, the district attorney or Gertz has authority to allow DNA testing. So he has a choice. He can either allow it or he can say, I've looked at the construction of Article 64, I've looked at the way the CCA has interpreted it, and I'm going to not allow Reed to conduct DNA testing on these items. And of course, he's enforcing Article 64 in that way. If the court were to say to him, you must allow testing because Reed satisfies Article 64, then he would have to allow it. But in this case, he's enforcing Article 64 by not permitting testing. He's permitted testing on some items, correct? He has permitted testing. Not by court order, but by agreement. That's right, Your Honor. And you can look at page 43A of the petition appendix for that detail. And of course, as I said, page 5 of the red brief cites a case called Skinner v. State from 2016 where the CCA also makes clear that there is authority for district attorneys to permit testing. I'm assuming you know our own finality rule, Court Rule 13-3. That's right. And the time to file a cert petition challenging a state court judgment runs under our rules from the time a decision is rendered on a timely file petition for rehearing, right? That's right, Your Honor. And in Hibbs, we explain the rationale behind that rule, correct? I think that's right, Your Honor. Because the court on rehearing could modify the judgment. The Texas Court of Appeals could do that here, too. Could have done that here. That's right, Your Honor. Could you have – I'm sorry. Yes. There is a difference between enforceability of a judgment and finality of a judgment, correct? I think that's right, Your Honor. I think here we would point to the analogy exactly that Your Honor is making. And I think that rule goes far back in our tradition. We have a – I would cite to you Texas Pacific Railway v. Murphy 111 U.S. 488 at 489 to 90, which is an 1884 case, which looks to older precedent. And it says there, if a petition for a hearing is presented, ellipsis, the time for an appeal does not begin to run until the petition is disposed of. So this has long been the law, and you would – we could also point to traditional due process analogies that we've pointed to in the briefs to say what we want to do is allow the state court proceedings to come to rest before moving into federal court. Could you have filed your 1983 complaint right after the Court of Criminal Appeals' decision? Your Honor, I think, yes, we could have. But I want to take a step back and note that there's a difference between injury when you can bring a cause of action and accrual days. And that's what this Court's decisions in McDonough and Manuel and Wallace v. Cato only do. But can you bring – can you bring suit on a claim before the claim accrues? Your Honor, I think you can. I think Wallace v. Cato makes that clear. I'm using the definition of accrual from the Court's cases that accrual is when the statute of limitations begins to run. So take Wallace v. Cato as an example. The Court makes clear that someone could file a false – a Fourth Amendment false imprisonment action at the moment they're falsely arrested. But there is – the Court calls a refinement from the common law looking to the false imprisonment claim at common law and saying, based on practical considerations, those causes of action didn't accrue until the legal process began, probably because it's hard to bring. So there are those cases. But why is it that this case should be held to fall within that set of, you know, cases where there's a delta between the two? I mean, why shouldn't we just – isn't it the simplest thing just to say the person isn't harmed until the State process has come to an end and we know for a fact what the State judgment is? Well, Your Honor, I think you can look at it various ways. I think you can look at it conceptually and say, by analogy, a traditional due process claim, someone – those claims are not complete until the full process is over and you know there's been a denial of due process. You could look, as Justice Sotomayor was asking about the traditional finality rule, those are analogies you could look to. You could also look to the analogies in cases like Wallace v. Cato or McDonough where you're saying, okay, we have a favorable termination requirement because we're looking at the full process before the State courts. I think there are also the practical considerations which are very important here. I think if anyone went into – But you're saying you don't care which method we adopt. Either Justice Alito's method where there's a delta between when you can bring a claim and when the statute of limitations clock starts running, or I was suggesting maybe there ought not to be a delta. Maybe you – the cause of action is complete at the same time that the statute of limitations starts running, and both are when the State process has come to an end, including the opportunity for rehearing. So I just want to say a few things, Your Honor. It's not that I don't care what the rationale is. I think they're mutually supporting rationales. One thing I do want to point out is we don't think there's an exhaustion requirement, or at least that this Court should say there's an exhaustion requirement. So if you were to say that the harm is not complete in such a way that someone could not bring a suit earlier, I think that that might be problematic down the road. When an exhaustion requirement is just a requirement that says even once you've suffered harm, you have to go through certain processes rather than bring suit. But this would be a statement that the harm doesn't occur until the time when the opportunity for rehearing has gone by. I think I would say it this way, Your Honor. I think someone – I think a prisoner could exit the State court procedures at any point and bring a Section 1983 action at that time. And in all likelihood would allow, as I think Your Honor posits, the time for a hearing to lapse. And I think that would be okay. There would be harm at that point. There would be a cause of action at that point. And the procedures would be – the State court proceedings would have come to an end. There would be a finality because there was no request for a hearing. So, I mean, you want to have your cake and eat it, too. My concern with your position would be that it's going to put off the time when people can bring claims for access to evidence. Because the claim is not going to be complete until you have a final decision by the CCA under your view, which helps you because you want to put off, you know, the time at which this is – because otherwise the statute of limitations problem would be clear. But on the other hand, somebody who's there and is ready to go in Federal court really won't be able to until the end of the CCA process. Right? Because under your view, he has not finally been deprived of due process yet. Your Honor, I would answer it this way. I don't think there's an exhaustion requirement. I think someone can exit the State court proceedings earlier. I think that the challenge – because the analogy to traditional due process claims, I was discussing with Justice Kagan, is saying there's not a due process deprivation until the proceedings are complete. Of course, what we're actually challenging here, and I think what litigants like Skinner would be challenging or Osborne would be challenging, are the requirements under State law that they must meet to show that they're entitled to the evidence. So it's not about, like, necessarily the length of process, but about what they actually must show. Well, I know. But the answer on the other side is, well, they're not going to know until they finally get an authoritative determination from the CCA. Right? So, Your Honor, I would say this. I think this is, I'm sure, why the Court suggested in Osborne that it would be a good idea to continue pursuing these processes. And Skinner was, as the Court noted, better positioned than Osborne was to raise that challenge because he had gone all the way to the CCA. I think that there are going to be practical concerns for litigants who try to challenge the State's procedures before they've actually tried to invoke them and seen what result they get. I think we could come up with hypotheticals where, let's take the person who gets a ruling from the trial court and it says you're not entitled to the evidence. You failed these requirements. Okay. And this happens to be a State, unlike Texas, because it took a number of years, in this case, to come up with, for example, a non-contamination requirement. Well, let's say this is five years from now in a State with plenty of appellate precedent on what Article 64 means. And they look at the trial court's ruling and they say, well, I know what's going to happen if I appeal. I want to go straight to federal court. So I think the ---- Or what about a State in which there is no such process? I mean, we have Texas here that has a process for appealing all the way through and getting a conclusive determination. But I suppose Texas didn't have to have Rule 64 or Article 64. And so if you have a State in which the DA says I'm not giving you ---- I'm not going to give you DNA testing because of how I understand the law, what's your view as to whether or not a person could go directly to federal court at that point and maybe not even go to the State? Your Honor, I think in that ---- of course, it's not before the court. But I think in that case, the person could go directly to court. They would be able to say, I view the district attorney's action as enforcing this law, and I think the law is unconstitutional in whatever the ways are. And so it's ripe at the point at which the person is denied, ripe for the point, for the purpose of going to federal court. But I thought your answer to Justice Kagan was going to be we're not really in the injury discovery rule world. In other words, she suggested that the person ---- why don't we say that the person isn't harmed until he gets to the end of the State process? But that seems to me to assume that we're looking for an injury when we're talking about a cruel in this context. And I had understood, you know, Justice Scalia in the TRW case, for example, to say that in a 1983 case, we're not really looking for injury in that same way. We're looking for the cause of action to be complete, which is, I guess, the determination that you don't have DNA testing in this situation. I think the injury, Your Honor, is the deprivation without due process of the liberty interest in proving your evidence, in proving your innocence with newly discovered evidence. Suppose this case is resolved without a determination of the merits of your due process challenge to the court of criminal appeals interpretation of Texas law. And now suppose another case arises that's similar to this, involving a different prisoner, and the prisoner asks the district attorney to allow DNA testing of certain evidence, and the district attorney says no, it's been contaminated, and therefore, under the authoritative interpretation of the CCA, it's not ---- you don't have a right to have it tested. Could that prisoner sue right away under 1983? I think that prisoner could, Your Honor, because I think there is no exhaustion requirement, and they would be able to allege under, I think, Your Honor's hypothetical, that there is deprivation without due process of law, because they would be pointing to the procedures of challenge. All right. Now suppose the prisoner says, but I am going to challenge this in court. Now it doesn't accrue. When would the statute of limitations have arisen under the first scenario I gave you? I think it would run from the refusal if the prisoner did not invoke any process. I think, Your Honor's next hypothetical, the prisoner invokes the next process. Right. And then it doesn't run until the denial of rehearing by the court of criminal appeals. Or whenever the prisoner exits the state court process. Counsel, I have a question about Rooker Feldman. Yes. So I understand, let's say that I agree with you that your no-contamination claim is not barred by Rooker Feldman, because I think you could say the CCA's decision, assume it's an accurate interpretation of state law, it's just as if the no-contamination requirement was in the statute itself, and so it's a different claim. Is that true, though, of the delay finding and the harmless error, like jury would have reached the same verdict even if it had known about the exculpatory evidence findings? Because those, it seems to me, am I right that you're raising a procedural due process challenge to that as well, that that's part of the claim? That's right, Your Honor. So we're challenging the three different aspects. So why aren't the other two not barred by Rooker Feldman? Because those seem to me about the application of the state standard to the facts of your case. Right. So we set out some of the, of course, we're not at the merit state, but we set out some of the merit states on pages 40 and 41 of the blue brief. What I would say is it's a challenge actually to the rule that the court of criminal appeals articulated there. So, for example, on what we might call the exculpatory evidence requirement, the problem is we have alleged it, or there are several problems, but that the court of criminal appeals says that the- The inculpatory doesn't count? Discredited. So you can't show that the state's trial evidence has been discredited, which is something I think Justice Sotomayor's separate opinion in 2020 shows this is a problem. You can't point to other evidence inculpating, for example, Jimmy Finnell. And then the unreasonable delay bit. It's not about the application. It's not a particular application in the judgment. It's about the rule that you can use against the prisoner, these efforts to establish exculpatory evidence, the types of evidence we were just talking about on the exculpatory prong, and hold them against the prisoner. Thank you. That's very helpful. A quick question on the Article 3 point. Why didn't you seek an injunction? Why did you do a declaratory judgment instead? I think a few points, Your Honor. The first is that it's, of course, not necessary. We pointed in the briefing to Franklin versus Massachusetts. This court can expect executive officials to abide by the court's rulings. And really I think as far as the court would need to go to find redressability here is to say, if the federal district court were to say these procedures are unconstitutional, you have to provide due process, you have to have a version of Article 64 that provides due process, even just that would remedy the injury because, again, the injury is deprivation of DNA testing. Oh, no, no. I understand your argument. I was just wondering why you didn't, you know. I just didn't think it was necessary. Okay. So what I'd like to do is perhaps move to the practical considerations and the problems with the Fifth Circuit's rule and Gerst's rule. As I stated in the opening, on the Fifth Circuit's rule, the only injury that the Fifth Circuit seemed to care about occurs when the trial court first denies testing. But I think if that's the rule, then every single time a prisoner continues to pursue relief in state court and seek that testing, there's a great risk of parallel proceedings because the prisoner is going to have to run to federal court, file a complaint that's protective. The judge may or may not require motions and responses to figure out what he or she is supposed to do with that protective complaint. And then there's going to have to be an amended complaint once the state appellate courts rule on the issue. Suppose the difference is between a rule that says the statute of limitations runs when the court of criminal appeals renders its decision and a rule that says it doesn't begin to run until rehearing is denied. Then you're talking about a brief period of time, I would imagine, in most cases. In this instance, it seems to have dragged out. So part of your argument is that your rule is better because it serves interests of federalism and comedy. But how weighty is that if you're just talking about a relatively short period of time? So I'm going to make two points as to the additional time for rehearing, Your Honor. The first is that I think symbolically it just disrespects the state court's appellate process to say, we're not going to, the federal court doesn't care about what happens after, during the rehearing process. I think the second point is that, as the court knows, Section 1983 statutes of limitations are borrowed from state law. And so not every state is going to have a two-year, three-year, four-year statute of limitations. I think Kentucky, Louisiana, and Tennessee, we've found, have a one-year statute of limitations, for example. And I don't think it's all that out of the ordinary for a rehearing motion to be pending. In this case, it was six months for a significant amount of time. And, of course, we normally don't think that someone is dilatory unless they've actually filed beyond the statute of limitations. I think the other point that I would go to is it's not clear to me what purpose the statute of limitations is really serving here for Texas. Most states, and I'll point to the retired judge's amicus brief, most states don't follow the same timeliness rules with these types of post-conviction DNA testing regimes as they do for their post-conviction habeas proceedings, for example. Because they recognize, I think as the Court said in Osborne, the power of DNA testing to exonerate as well as to inculpate. And so we don't have the types of concerns normally that you would have to protect with a statute of limitations, such as concerns about faded memories of witnesses or stale evidence. After all, if anything, those concerns are going to count against the prisoner. Does the CCA grant rehearing more frequently than this Court does? I am not certain how often the CCA grants rehearing. We did find some examples where they have granted rehearing where it can take a significant amount of time for the Court to do so. But I would say, going back to the earlier point, Your Honor, it would be important for the federal courts to allow the state procedures to play out because as Gertz concedes, and I think it's page 25 of footnote 5, rehearing can change the outcome. So you would run the risk of having a prisoner run to federal court to be timely, only to have pending rehearing proceedings or the suggestion that the prisoner had to hurry up to somehow get there. You were going to tick through a list of practical problems, and I just want to make sure you did that. Thank you, Justice Kavanaugh. I think the other point here is that the Court has suggested to prisoners in Osborne and Skinner that they go pursue the state court procedures. And of course, that's exactly what Mr. Reed did in this case. And I think it would put prisoners in the tough position to be expected to pursue the state procedures, as Justice Alito was asking about, you know, the interests of federalism and comity, and then say, but we're going to start the clock at some early point. The other problem, I think, with Gertz's rule, which I understand to be a notice rule, so he's not looking at the 2014 initial trial court denial. Let me just step back and say what happened in 2014. He's looking at the 2016 denial. So what happened in this case was the trial court initially denied DNA testing in 2014, didn't make any findings or holdings about non-contamination. It went up to the Court of Criminal Appeals. The Court of Criminal Appeals wanted further findings, and one of the things it wanted finding on, and several things, but one of them was a chain of custody requirement, which you eventually have the non-contamination requirement that lives inside the chain of custody requirement. It sends it back down. And my understanding is that Gertz thinks that it's only in 2016 when the trial court on remand is saying, okay, there's a non-contamination, or making a finding of non-contamination, that now the prisoner has no, that Mr. Reed has noticed that this may be a requirement that is being used against him. I'm not sure what that rule would do in the mine run of cases, because I think that any time you have multiple opinions, whether it's multiple trial court opinions or an opinion from a trial court, opinion from the Court of Criminal Appeals, the litigants in the courts would be expected to compare the different opinions and say, when was I supposed to know the way that the Court of Criminal Appeals or the way that the state high court was going to ultimately resolve this, either the first issuance of the opinion or on denial of rehearing. And that seems like a very burdensome and unworkable regime. So I think the simplest rule that everyone can understand, the courts can know how to administer, the litigants can know how to understand from the beginning, is as long as they're invoking available state procedures, and just like the federal system, the CCA makes a rehearing mechanism available, the cause of action has not accrued. No, the statute of limitations has not begun. Can I ask you a question just about how this works? So if you think about the process that you've been given, it's Article 64, which allows you to make the motion to the trial court, which you did. And am I understanding correctly that you didn't really know about the no-contamination requirement until the process started unfolding? So you couldn't have brought your challenge before you invoked Article 64? That's right, Your Honor. Okay. So I'm thinking, while Article 64 sets out the process that you're due, it gives you the trial court and then the direct appeal to the CCA, and the CCA has to take it, right? It's not discretionary. In capital cases like this. In capital cases like this one. So you got the appeal to the CCA, so it wouldn't have made sense for you to file your suit at the trial court because the process hadn't yet run, and part of the process that Texas is giving you is allowing for mistakes to be corrected, right? That's right. So then I think it matters whether, at that point, all Article 64 says it stops after it says you get the direct appeal to the CCA. Now, it's part of the CCA's other procedures, right, that you can file a petition for rehearing. But should we really think of that as part of the procedure given in Article 64 for the prisoner to run through? I don't know that I would agree that it's not part of the procedure for Article 64, because I think once you're put into the Court of Criminal Appeals, and of course the court's procedures apply, it would be like this court's jurisdiction tends to be certiorari jurisdiction, but if you had any kind of jurisdiction that gets you to this court, then you could invoke the court's normal procedures, or the same for the CCA. And I think in any event, the practical considerations and the federalism and comity considerations are strong. I think that it would be this court or the federal courts essentially saying to the state courts, we don't care what other mechanisms you have that are available. We don't care how often you may or may not change your reasoning, because that could also happen. So I think the only distinction the court could draw between saying that the cause of action should accrue at the trial court's opinion versus the CCA's opinion versus denial of re-hearing is saying, well, we think it's a lesser chance that something is going to happen. But again, the procedure exists for a reason. And just as McCulloch, who was Justice Sotomayor at the beginning, you wouldn't expect, I don't think anyone could come to this court before they received a denial of re-hearing or an amended opinion on re-hearing before a federal court of appeals in much the same way. Thank you.  Justice Thomas? Did you file a cert petition in this before? We did, Your Honor. If we had granted that cert petition, would that have been improperly granted? I don't think it would have been improperly granted, Your Honor. I think, as a practical matter, it was, going back to the call with Justice Barrett, very difficult for Mr. Reid to make a due process challenge to the CCA's authoritative construction of Article 64 until that construction issued. And so after denial of re-hearing, thus when we filed the cert petition with this court raising, among other things, due process challenges. And, of course, the court denied review. Justice Alito? This case can be viewed as having been drastically narrowed as a result of the briefing so that you have clarified that the particular claim you're pressing is an authoritative construction claim. You're challenging the way the statute was interpreted by the court of criminal appeals. And you couldn't know that that would be the interpretation until the court of criminal appeals issued that decision. Right? That's right, Your Honor. And so the question then, if you've other arguments, and they may be meritorious, but if we just look at that, the difference, what's at issue really is kind of case-specific and really quite narrow. Whether in this particular type of case involving an authoritative construction claim, due process claim, the statute begins to run when that construction is announced by the CCA or whether it doesn't begin to run until the time for a petition for re-hearing has elapsed or the petition for re-hearing has been denied. Right? I think that's the only question the Court needs to answer, Your Honor. I know that your colleagues have asked other questions that would go to when does the injury occur and what would happen in other cases. I don't think the Court needs to lay out a whole framework, but I think we've provided some answers as to how it could. Okay. Thank you. Justice Sotomayor? All the other issues. The Fifth Circuit decided just this jurisdictional issue, correct? The Fifth Circuit decided that there was no Rooker-Feldman problem, there was no Ex parte Young problem. There was no standing problem, I believe, as well. And then it just resolved on the statute of limitations grounds. And it decided what the trial court decision, the statute? 2014, the first trial court decision. Okay. Justice Kagan? Justice Gorsuch? Mr. Barrett? Thank you. Thank you, Counsel. General Stone? Thank you, Mr. Chief Justice, and may it please the Court. Reed's claim is both jurisdictionally barred and untimely. On jurisdiction, the defendant Reed named, the claim he brought, and the relief he seeks don't line up. Reed sued Gertz for a declaration regarding Chapter 64. But Chapter 64 governs only access to testing through Texas courts. It does not control Gertz's common law authority to agree to testing. A declaration regarding Chapter 64 against Gertz would neither affect Gertz's common law authority nor bind Texas courts. That mismatch deprives Reed of standing and forecloses his reliance on Ex parte Young. On the merits, everyone agrees that due process is the relevant constitutional right. And everyone agrees that Wallace supplies the presumptive rule. Reed's claim accrued when he had a complete and present cause of action. Though he formulated it somewhat differently in his complaint and his petition, the grovement of Reed's claim now is that the Court of Criminal Appeals' decision violated due process. If so, Reed had a cause of action, and therefore his claim accrued no later than when the Court of Criminal Appeals issued its opinion and judgment, because that opinion and judgment imposed the legal consequences on Reed that he says violated due process. The Wallace rule should apply here. It would respect comity by treating the CCA's judgment on a matter of state law the same that this Court treats its judgments. It's immediately effective. It would work regardless of how a given state structures its DNA post-conviction testing regime. It would discourage prisoners from manipulating their accrual dates through motions practiced in state courts. And finally, it would supply an accrual date by which all litigants, including those serving noncapital sentences with a strong interest in early resort to a Federal forum, could predictably measure limitations. I welcome the Court's questions. Just so I'm clear, because I'm not quite clear, exactly what is the deprivation of liberty here, and who is the perpetrator? I understood, Your Honor, the deprivation was that Texas courts had prevented Mr. Reed from having fair access to Article 64 proceedings, and so they'd imposed a condition that caused those proceedings to be fundamentally unfair. If that's correct, then it's the Court of Criminal Appeals and its decision revealing this component of Article 64 that inflicted that harm. So, General Stone, you don't agree with the Fifth Circuit when it said that the injury was inflicted by the trial court? Yes and no, Your Honor. So this is part of the consequence of, as Justice Alito put it, this narrowing over time. Originally, in his complaint, Mr. Reed bought both a facial and an as-applied claim. I think that facial claim accrued, the original facial claim, as soon as he was told no by the trial court. I think his authoritative construction claim originally accrued as soon as a Texas court, in its opinion and judgment, included the violation of due process, which, as he most prominently includes, is the non-contamination requirement. The Texas trial court on remand of the Court of Criminal Appeals, in paragraphs 17 and 18 of its opinion, made explicitly clear that it said that Article 64 wasn't satisfied, precisely because the evidence had been touched by a number of jurors and court personnel, and that as a consequence, essentially, it was impossible to get useful DNA access. Can you restate your argument about jurisdiction insofar as you suggested that Gertz retains a common law authority despite any ruling of the court? That sounds an awful lot like you're saying that if the Federal court were to decide that Mr. Reed wins under Article 64, otherwise his procedural due process claim, Gertz could say, I don't care, I'm not going to give it to him. So can you help me understand what you mean by this? Certainly, Your Honor. As Mr. Reed acknowledged in her argument, Gertz has – there's essentially two different, entirely separate avenues by which a prisoner in Texas can seek DNA testing. One is by agreement with a prosecutor. Article 64 does not bind that in any way. It does not cabin a prosecutor's discretion whether to issue DNA testing. It does not impose any requirements on a prosecutor. It's essentially a plenary common law privilege that the Court of Criminal Appeals has recognized. Chapter 64 governs how individuals seeking through motions in Chapter 64 seek DNA through the court system. It's an elaborate procedure that once it's begun, an individual who has such relevant DNA evidence has to surrender. All right. So what happens if the person seeks DNA testing under Chapter 64 through the courts and the courts decide that the person wins? They get DNA testing. Are you suggesting that the prosecutor's independent common law authority could somehow override that and the prosecutor could say, I disagree with the court and I'm not going to give it to you? Absolutely not, Your Honor. Texas law, of course, provides that individuals who've brought Chapter 64 motions, individuals with relevant DNA, have to deposit that with the court. The court would issue an order providing for DNA testing on its own, and that order would go off to whoever the custodian was, and that would be followed. All right. So if your point is that we have a jurisdictional problem in this case because Mr. Reed has named Gertz and Gertz would only have authority over this under his common law principles, why isn't the answer just let him amend the complaint to sue the relevant person? I mean, that's sort of what happens. It's not that we say no standing and we dismiss the case ordinarily. A child court would say, oh, you have a problem because you've named the wrong official. Let's just allow for substitution. So why isn't that the answer? Certainly, Your Honor, in part because he'd ultimately, no matter what, have a problem under Ex parte Young. As this Court put in Whole Woman's Health, the plurality joined by Justice Thomas, the requirements for Article III standing in the Ex parte Young for getting around the sovereign immunity of, for example, the Court of Criminal Appeals requires something like an immediate or impending enforcement action. There is no such enforcement action. Okay, but that's just an argument that Article 64 can't, the right that is given can't be enforced because to the extent that the court is the one that would hold the evidence and under Article 64 you, as a prisoner, come to the court and you invoke that provision, but it's the court that holds it and under Ex parte Young you can't really sue the court, you're just saying that's a null right. And I don't understand how the law would be constructed in that way. Respectfully, I disagree, Your Honor, for two reasons. The more important one being that the petition that Mr. Reed sought under Section 1257 to this Court was a proper vehicle for alleging a due process problem in the Court of Criminal Appeals. He, as a matter of fact, in that petition raises substantively identical due process challenges as he raises in the federal court. So you're saying there's no 1983 claim that could be brought to enforce an Article 64 right? At least not like this, Your Honor. And we agree that that's inconsistent with the exercise of jurisdiction this Court impliedly allowed in Skinner. As this Court has put in Steelco, though, those sorts of questions that are either passed upon or briefed. No, no, no, not impliedly right. That was the basis of the Skinner-Rooker-Fellman analysis. I mean, isn't that what the Court said, and in Osborne, you can bring this kind of claim in federal court, says this Court in Osborne and Skinner, no? Two points, Your Honor. First, as this Court puts in Steelco, essentially implied exercises or blessings of jurisdiction that are not actually made holdings of the Court don't bind the Court going forward. Now, the Court did make a jurisdictional determination regarding Rooker-Feldman that I think actually is important in this case also because the Court determined in its opinion specifically relying on a concession that's not been made by Mr. Reed, specifically that his claim was not challenging anything that either the prosecutor did or that the court of criminal appeals did. Mr. Reed has already indicated in his response to Justice Barrett that his claim does in fact challenge certain aspects of how the court of criminal appeals reached its decision-making. So even on the narrow Rooker-Feldman point, Skinner doesn't bind the Court. All right, but what about the Osborne point that seemed to preserve the ability to bring a 1983 claim that raised procedural due process concerns? And you're saying here that there really is no way for Mr. Reed to bring such a claim in this circumstance. So isn't that inconsistent with what I guess you're saying the Court implicitly held in Osborne, but that was sort of the basis of the Court's constitutional analysis in this case? It's certainly inconsistent, Your Honor. The reason why we're not calling for Skinner to be overruled on this point is because this Court has said specifically it is not bound by those, as Justice Scalia colorfully put it, drive-by jurisdictional analyses. But we agree that this is inconsistent beforehand. Nonetheless, even if this Court were to essentially bless the exercise of jurisdiction asserted in Skinner and continue from the merits, Reed should nonetheless fail on the merits, because for several reasons. Mr. Chief Justice, one important concern you highlighted was the practical concerns about essentially everyone else. Mr. Reed's rule, which as far as we can discern today involves that his claim accrues as soon as he chooses to stop litigating in the state court system and neither a moment before nor a moment later, does a profound disservice to the typical DNA applicant who is not fighting off a capital sentence, who has been accused and convicted of a crime, and who wants one of two things, either resort to a constitutionally sound system that does not violate due process, or resort to a Federal forum as soon as possible. Now, while he says now that his claim might have existed as soon as he exited the Federal forum, of course, he claimed on page 17 of his brief that his claim didn't even exist yet until he had exhausted going through the State appellate process at minimum. So that's an important shift that he's made. I think, Justice Alito, when you pointed out inquiring whether or not a person would have a claim if, for example, the prosecutor said, well, I understand my right, my authority to run determinously with Chapter 64 and the Court of Criminal Appeals has said thus and such, certainly the claim accrues then because he's been he's suffered a denial based on that unconstitutional condition. Another point, of course, is ours is an incredibly easy to administer rule. Because a Skinner claim arises essentially from a judicial decision in essentially all postures, every judicial decision has a file stamp date. Someone running a Skinner claim or making a Skinner claim is going to point to a condition that they say this is the thing that violates due process. But easy to administer or no, what's the point? If he goes to Federal court pursuant to your rule while he's in State court, the Federal court will just stay the action until the State court action commends or concludes. So what difference does it make? I don't know. I thought the most compelling part of Mr. Reed's merits claim or argument was that none of the purposes of the statute of limitations, the principles behind that doctrine obtain in your rule. That it doesn't matter whether or not, other than just to keep a prisoner from ultimately being able to bring a Federal claim. Quite the opposite, Your Honor. In the ordinary case, our rule serves most individuals who want to be able to bring those Federal claims. Recall that Mr. Reed's rule requires them to go through the State appellate system before in fact, or at least the rule you advocated for in his brief, before they have a claim accrue. Someone like that, a person who is suffering under a term of your sentence. No, no, no. The statute of limitations is not about the person who's bringing the claim. It's about the defendant. Right? So the purposes that I'm trying to focus in on are the traditional purposes of a statute of limitations which protects the defendant. So why is the defendant in any different position, not the person who's bringing the claim, but the defendant, the State, if we run the rule your way versus Mr. Reed's way? Let me answer your question and let me explain why I believe that's tied to accrual even on the plaintiff's side. The answer to your question is, of course, States are best served by having defined dates that are not manipulable by individuals who are seeking to extend the length of their claims as long as possible. Every statute of limitations is on some level a statute of repose that gives someone who is exposed to potential tort claims or other claims definition as to when they no longer have to be on essentially preparing for litigation for those things. Now, the flip side of that is an accrual rule typically marks when an individual may first bring suit. There's – I heard the – this Court discussed the possibility of it being a claim that could be brought but that has not yet accrued. That is a very strange possibility. So when we're talking about an accrual rule that is sooner – that happens sooner in time, it serves State interests by giving States defined earlier and faster knowledge about what kind of – essentially what claims are against it. It also serves plaintiffs because once their claims accrue, they have resort to a Federal forum. So an individual who has to labor underneath Mr. Reed's rule where claims do not accrue at least until the end of the appellate process – But there's no exhaustion, so he's still fine. There's no exhaustion requirement, so he can – do you disagree with the representation that he can go to Federal court at any time in this world? I agree that he may go to Federal court as soon as he has suffered essentially the due process – the due process violation, but I would point out that's inconsistent with what he briefed to this Court. But no accrual date keeps him from going to Federal court, right? If his claim hasn't accrued, Your Honor, at least as this Court suggested in Madonna, a claim that hasn't accrued can't be brought. An individual cannot bring a claim that has not yet accrued. An individual can say, well, your claim isn't ripe yet for one reason or another. It hasn't yet accrued. That's – that is the function of an accrual date from a plaintiff's side. On a statute of limitations. Yes, Your Honor. If a claim has not yet accrued, ordinarily an individual can't bring it at all. Counsel, can I ask you to focus your attention on the difference between the date of the court of appeals decision versus the rehearing date? Why should we prefer your view to your colleague's view on the rehearing date? A couple of reasons, Your Honor. The first, of course, being for purposes of this Court's presumptive rule under Wallace. The thing – the actual constitutional violation that happened, the thing that caused the change of legal rights and decisions was the judgment. Rehearing changed nothing about the rights and obligations under Texas law or the U.S. Constitution to Mr. Reed. That's just because rehearing was denied. If rehearing had been granted and the decision had been revised, then it would have changed something. So why shouldn't we understand that this claim of Mr. Reed's, which is focusing on the authoritative construction, is focusing on the final authoritative construction, which we don't know about, until the end of the court of appeals  Two points, Your Honor. First of all, our rule takes account of that. In the rare case – and to answer Justice Alito's question, it's very rare that the court of criminal appeals grants rehearing. In the rare case where there is a rehearing and the rehearing leads to a different decision which then imposes an unconstitutional condition of some kind, that will be the accrual date. Very uncommon, but at least that will be the defined order which will have changed the rights and obligations of Mr. Reed and any other litigant like him. But that suggests that there's a sort of changing accrual date. First we thought the accrual date was this, but now we think the accrual date is that. Why isn't the simpler rule just to say we don't know what the authoritative construction of the court of appeals is until the court of appeals process has concluded, the end? Two points, Your Honor. First of all, I think the hypothetical you described is just an ordinary application of mootness, where if something allegedly injured you and then that thing changes in a fundamental way, your first claim may have gone moot, but your second claim is live. To answer your question regarding what's the sort of easiest finality, why that system doesn't work as a matter of sort of administrability, it's simple. Mr. Reed has not articulated any principle that would sort out his petition for rehearing from any of a petition for certiorari, a petition for rehearing from a petition for certiorari, a motion for essentially the state equivalent of a Rule 60B motion, a motion to recall the mandate, all of which Texas courts entertain. And if the only rule he's offering is, well, as soon as someone exit the state court system, then they have their accrual, we're left with exactly the system that this Court cautioned against in Wallace, where essentially a plaintiff can choose the accrual date that he finds most genial and then can bring lawsuit then. Counsel, that's actually a question I wanted to ask you about, the mandate. You argue for the date of the judgment at the very latest. I know you have some arguments about it being earlier. Your colleague argues for the rehearing date. Neither side argues for the issuance of the mandate. Why? Because, Your Honor, in Texas, much like, for example, with this Court, the mandate is a ministerial option, a ministerial document that instructs a lower court officially as to the nature of the judgment of the superior court. It does not affect the rights and duties of the parties. A judgment is immediately appealable or is immediately effective from the court of criminal appeals unless someone successfully seeks a stay or other sort of exceptional appellate remedy. Sotomayor So let me give you a hypothetical. State court denies testing on one ground. Party, you have taken the position in your brief that the accrual should be from that decision, correct? Assuming that that ground is a constitutional violation, yes, Your Honor. All right. Now, they go up on appeal, and there was no appeal there. They go up on appeal, and the appellate court in Texas says they were wrong on ground one, but they were right on an alternative ground. And now you say the plaintiff should appeal from when? He should have appealed from the first decision, or now he should appeal from the second or both? If I understand correctly, Your Honor, so we've got a trial court that imposed one unconstitutional condition. He should have appealed then. That's what you're saying. Well, if there's – I assume it's because the appellate court's involved that he appealed that first judgment. Or are you saying that the 1903 trial? No. He does – are you saying that him appealing stays the time he has to file a motion? No, Your Honor. He can go immediately to Federal court on whatever the unconstitutional condition is. Let's assume he does what the State tells him, does a timely appeal. If he came to Federal court in the middle of that appeal, would you argue that he doesn't have a viable claim yet? No, Your Honor. Because the appellate court hasn't decided this issue constitutionally. Certainly not, Your Honor. On the assumption that his claim is that the trial court's decision included some condition that violates due process. Let's say this noncontamination. The same is here. And so you're saying what should the Federal court do? Should it stay and wait until the appellate court says yes or no? It need not, Your Honor. I might point out for practical purposes, for specifically Mr. Reed's claim, even had he waited past rehearing, even had he waited past certiorari being denied, he still had about 10 months left on his two-year clock. I know. You're claiming he was dilatory.  Is there any importance to not letting him not exhaust but go through a pending appellate process? He may, Your Honor, if he wishes. But if he's already suffered a constitutional violation. And so now the Federal court should wait or not wait? It need not, Your Honor. But it can. If parties request that it wait, that would be on a case-by-case basis. That seems like an awful waste of time. But, Your Honor, the idea that there would be a freestanding stay or freestanding essentially pause on the accrual of 1983 actions merely because there are similar topics in issue in state and federal court is exactly what this court rejected in Wallace. Mr. Stone, I have a question about this suggestion that he could exit after the trial court denied the evidence. Because, I mean, maybe I'm thinking about this incorrectly, but in a procedural due process claim, the claim is that the procedures given by the state were not And in the case of Article 64, the full run of the procedure includes the trial court and then the direct appeal in a capital case, the direct appeal to the CCA, and then we can have this dispute about whether the petition for rehearing is included or not. But I don't understand why he could exit at the trial court stage because the way Article 64 is set up to ensure that he's not deprived of a constitutional right erroneously is to give him the opportunity to appeal to the CCA and let the CCA correct any mistake that the trial court has made. So am I understanding that correctly? I just don't understand how the cause of action exists until the procedures have failed him. Two points, Your Honor, the more direct one than the less. The more direct one is I think he makes a different kind of due process claim. His claim is not that the processes were insufficient. His claim is the processes are basically unfair. And when an individual says the state has subjected me to a process that is basically unfair, it cannot possibly give me a fair shake, that person has a full and complete present cause of action at that moment regarding whatever the regime is that they say they've been tried to, which is probably partially why my friend on the other side specifically agreed he could in, for example, Justice Alito's hypo, exit the state court system and begin his suit in federal court whenever he liked. But that's not this case, is it? I mean, maybe this case has been narrowed, but the case before us is not that. The case before us is specifically conditioned on a court of appeals determination. So he couldn't exit before he gets the court of appeals determination. As he described the harm that befell him, that harm befell him originally in the trial court. Now, understandably, as part of his – part of a tactic to both narrow the claim and to push forward the potential accrual date, he now says in his reformulated question presented that it's only from the – that it's only from the court of criminal appeals. In that circumstance where the original condition is unconstitutional, originated in the court of appeals the first time, that's the first possible time he has a claim that accrued. And even accepting the narrowing of his case here, we still are left with these untimely by the order – by the issuance of that opinion and judgment. But, Justice Kagan, this is not a narrow case. This is about whether or not individuals seeking to press Skinner-style claims are allowed to essentially avail themselves of endless procedure in state courts, whether or not procedurally defaulted with – Well, just the procedure that Article 64 gives. And I guess I don't see how this particular claim would have accrued, been ripe to exit the suit at trial court – after the trial court ruled because the claim is that the CCA could have corrected any mistake that the trial court had made, right? These are about opportunities for the procedure to run its course in a way that would correct any unfairness or any mistake made below. I think there's a – I think there's a basic difference between insufficient procedures due process claims and unfair procedures due process claims. But even if I'm wrong and you're right, Your Honor, that still means Article 64 provides him appeal up to the court of criminal appeals and nothing else. It does not provide him in its own terms with petitions for rehearing, motions to recall the mandate, these other additional sort of miscellaneous potential motions that could extend the accrual date for purposes of candidly forestalling imposition of a capital sentence. And so at very worst, his claim is still untimely because he filed several months too late after two years from the issuance of the opinion and judgment, which marks the end of the appellate process. So it seems to me the question here involves tension between two – two principles. One is the principle that a State does not deny procedural due process until the State-provided procedures have ended. And the other is that a person bringing a 1983 claim, including presumably a 1983 due process claim, does not have to exhaust State remedies. So how do we – how do we reconcile those two? I think, Your Honor, you go back to sort of the theory on which a Skinner claim sits, which is that for Rooker-Feldman purposes, for sort of theoretical purposes, it's not the court that's doing the harming, it's the statute. What the court does is it provides a binding authoritative construction. So for purposes of when Mr. Reed was authoritatively bound, when his rights and duties were liquidated by Article 64, that was the first trial court judgment that included the term he dislikes. He was not required to appeal that. He certainly wasn't required to pursue a motion for rehearing, as Mr. Reed conceded at the podium today, before he brought a 1983 action. If there are no further questions, I'm – oh, I'm sorry. Are we going to go? Yeah. Justice Thomas. Justice Kavanaugh. Any further? Justice Jackson. Yes. So even if he has a full and complete cause of action after the trial court rules, which is what I understood you to say in response to Justice Barrett, do you dispute that in determining when the accrual date should be, when the statute of limitations runs, we look at all sorts of things, not just when, quote, unquote, an injury occurs? Let's say that was the injury at the time. I guess what I'm worried about is the suggestion that the accrual date necessarily has to start from a moment in which you can identify an injury such as you have in this case, when in cases like McDonnell and Manuel, the court seems to suggest that the accrual date is set in light of other considerations, including the fact that in this case you would have parallel litigation if you set the accrual date early. In this case, it doesn't seem to make any difference in terms of helping the state because the litigation in the state court is going on, so it's not like they don't have notice that the person is interested in litigating this claim. So all of the reasons why you would set it early don't seem, in my view, to be happening here. So do you concede that we don't just look at when the injury occurred? I can agree with you with one caveat, which is that this court, for example, McDonnell, starts out with what it calls its presumptive rule under Wallace and then turns to see whether there's either inspired common law analog or a particular practical reason to choose another date. For the various reasons we've discussed so far, we don't believe there is one and there are practical concerns with choosing rules other than the Wallace date. But I agree that McDonnell makes clear that there are sometimes reasons, either analogous to common law torts or otherwise. To speak very finally about whether or not there's a state concern here, there, of course, is a state concern with having the accrual period be sooner rather than later because, ultimately, my friend on the other side commented he can't imagine how retrial or how time could possibly harm the state. In 2021, upon remand from the CCA, a trial court gave essentially a ten-day actual innocence hearing for Mr. Reed where Mr. Reed's theories of innocence were fully and fairly litigated. And what you'll see from that 50-page opinion is frequently many of the original witnesses or individuals involved either have dementia or died. So additional delay, aside from tending to have DNA evidence degrade, as Justice Alito put in his separate opinion in Bosborne, additional delay harms the state's ability to be able to redress this if, for example, he's entitled to a new trial for one reason or another, which he most emphatically is not. Thank you, Counsel. Rebuttal, Mr. Ryder-Longmead. Thank you, Mr. Chief Justice. Just three points. Justice Alito and Justice Barrett asked about, I think, the exhaustion question and whether exhaustion would be required. I don't think the Court has to address that here. I don't think it is required. I don't think the Court has to address it because, of course, Mr. Reed, if you look at it this way, did exhaust all of the available procedures and, therefore, Mr. Reed, did exhaust all the available procedures. That is a requirement. But if it's not a requirement, then we're saying, by analogy, you would look to traditional due process claims, and they're all the practical reasons, of course, to wait until the state court proceedings are over. The second point is I didn't hear any practical concerns, maybe until the end there, about capital defendants, as to why Gers' rule is superior or why it's more administrable. I think Mr. Reed's rule is the clearest, most administrable, simple rule here. And, finally, as to the delay question, many defendants are going to be non-capital defendants, like Osborne. And those people are going to be subject to the same regime. And nothing is going to happen to them. They're not going to see their freedom one day sooner if they don't prevail in these proceedings. So there's no reason not to allow the proceedings to fully play out. And as to Mr. Reed, what I would say is that it's my understanding that you do not get a stay of execution just because you brought an Article 64 proceeding or just because you're in Section 1983 proceedings before a federal court challenging the adequacy of the procedures available to you from the state. Mr. Reed has a stay of execution from the Texas courts on his ninth subsequent habeas petition before the courts, where he raised evidence that Fennel admitted to killing Stites because he discovered she was sleeping with a black man, that Fennel threatened to kill Stites if he caught her cheating, that Fennel made inculpatory statements at Stites' funeral, and that Fennel and Stites' relationship was fraught. We have all the other evidence that Justice Sotomayor has pointed to that is in the briefing, and those are all serious things we think the Court should consider. So I think when you look at the fact that no one is going to be able to get a stay of execution without some showing, there's really not a concern of delay in cases like these. Thank you, counsel. The case is submitted.